CMM:APW
F. #2020R01125

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                         Docket No. 20-CR-582 (MKB)

RAZA SIKANDAR,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW
## IN SUPPORT OF THE GOVERNMENT'S MOTIONS *IN LIMINE*

                                      JACQUELYN M. KASULIS
                                      Acting United States Attorney
                                      Eastern District of New York
                                      225 Cadman Plaza East
                                      Brooklyn, New York 11201

Andrew P. Wenzel
Assistant U.S. Attorney
     *Of Counsel*

**PRELIMINARY STATEMENT**

Trial for defendant Raza Sikandar (the "defendant" or "Raza Sikandar") is scheduled to begin on November 22, 2021. The government respectfully submits this memorandum of law in support of its motions in limine to offer at trial certain evidence against the defendant. Specifically, as discussed in more detail below, the government requests that the Court rule that evidence proving the defendant, Raza Sikandar, is not the person depicted in the passport that defendant used at John F. Kennedy ("JFK") airport on November 18, 2020 is admissible. Additionally, the government requests that the Court permit evidence proving that Raza Sikandar was wanted by multiple law enforcement agencies at the time he entered JFK using the passport of another, as such evidence is inextricably intertwined with the existence, nature, and background of the charged crimes, and relevant to prove the defendant's motive and intent to commit the charged crimes.

The government further moves in limine to preclude certain evidence and argument by the defendant; specifically, the defendant should not be permitted to introduce evidence or argue that his actions were justified under the affirmative defense of duress.

Finally, the government seeks leave to file additional motions in limine and offer rebuttal evidence, depending on the evidence presented at trial.[1]

**BACKGROUND**

On November 18, 2020, Raza Sikandar fled the Czech Republic, and following a stop in Warsaw, Poland, ultimately arrived at JFK airport. The defendant presented to the

---

[1] To date, the defendant has not provide any reciprocal discovery, as requested by the government on January 28, 2021.

1

Customs and Border Protection ("CBP") Officer at passport screening a United States passport with the name J. E.,[2] along with J.E's date of birth and his unique passport number.

Electronic scanning of the defendant's face and the photograph in the passport did not match so the defendant was referred to passport control secondary for an interview. During this interview, the defendant continued to claim that he was the person on the presented passport, and that he left the United States in March of 2020 to visit a person that he met on an online dating site. CBP agents retrieved the passport application for J.E.'s passport to review biographical information, and the defendant was unable to verify some personal data contained in the passport application.

The defendant was fingerprinted and was a match to an individual with FBI number 473410KB7 named Raza Sikandar, date of birth February 8, 1982. Raza Sikandar is a United States citizen who has multiple outstanding warrants in Maryland and Virginia for absconding from probation, obtaining money falsely, failing to pay child support, and driving while impaired. Additionally, Raza Sikandar has a lengthy criminal record for numerous crimes of fraud, identity theft, and grand larceny. In 2018, Raza Sikandar was placed on Fauquier County Virginia's "Top 10 Most Wanted" bulletin, which was published on the internet and contained the name and picture of "Raza Hasan Sikandar." The defendant's appearance matches photographs of the person arrested in Maryland and Virginia.

On December 18, 2020, a grand jury sitting in the Eastern District of New York returned a two-count indictment, captioned <u>United States v. Raza Sikandar</u>, 20-CR-582 (MKB), charging the defendant with misuse of a passport and aggravated identity theft, in violation of 18

---

[2] The true name of J.E. is known to the government and defendant.

U.S.C. §§ 1544 and 1028A, respectively. Trial is now set to begin on November 22, 2021, as noted above.

**ARGUMENT**

I. <u>Evidence of the Defendant's Prior Bad Acts and Uncharged Conduct is Admissible on the Government's Direct Case</u>

On its direct case, the government intends to introduce the following evidence: (1) testimony from the complainant, J.E., that he hired the defendant as his attorney in the Czech Republic and reported the defendant to Czech authorities when he suspected the defendant had committed fraud; (2) testimony from the defendant's probation officer who supervised the defendant while the defendant was on probation in Maryland in 2015 and 2016; (3) fingerprints, warrants, arrest photographs, and certificates of conviction from the defendant's prior convictions in Virginia for grand larceny and obtaining money falsely, as well as testimony from a fingerprint comparison expert that fingerprints taken from a person named "Raza Hasan Sikandar" in Prince William County Virginia in 2009 matched fingerprints taken by agents from the Department of State when defendant was arrested on the instant matter; (4) testimony from the defendant's brother, Shuja Sikandar, that the defendant is his brother Raza Sikander, and that the defendant stole his identity in 2016; (5) bail applications and admissions by the defendant in court in this matter that he is Raza Sikandar; and (6) a public "Top 10 most wanted" bulletin depicting the defendant and the name Raza Sikandar.

As discussed in more detail below, this evidence is admissible as direct proof of several elements of the charged crimes and is inextricably intertwined with the narrative and background of the case. Additionally, the evidence is admissible under Fed. R. Evid. 404(b) for several purposes, including "proving motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." <u>See</u> Fed. R. Evid. 404(b).

A. Applicable Law

1. Federal Rules of Evidence 401 and 402

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402, in turn, provides: "All relevant evidence is admissible, except as otherwise provided . . . ."

Direct evidence is "not confined to that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 941, 942 (2d Cir. 1997). As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." Id.; accord United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991). The Second Circuit has repeatedly held that actions and statements are admissible as direct evidence of the crimes charged, and are "not considered other crimes evidence under" Federal Rule of Evidence 404(b), if (a) they "arose out of the same transaction or series of transactions as the charged offense," (b) they are "inextricably intertwined with the evidence regarding the charged offense," or (c) they are "necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); see also United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007); United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003). In such circumstances, the uncharged crimes evidence is "appropriately treated as part of the very act charged, or, at least, proof of that act." United States v. Quinones, 511 F.3d at 309 (internal citations and quotations marks omitted). See also Coonan, 938 F.2d at 1560-61 ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged in order to provide

4

background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.") (citations omitted).

2. <u>Federal Rule of Evidence 404(b)</u>

Federal Rule of Evidence 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Second Circuit follows an "'inclusionary approach' to the admission of prior-act evidence," in which "evidence of prior crimes, wrongs, or acts is admissible for <u>any</u> purpose other than to show a defendant's criminal propensity." <u>United States v. LaSanta</u>, 978 F.2d 1300, 1307 (1992) (citations and internal quotations omitted) (emphasis in original), abrogated on other grounds, 526 U.S. 559 (1994); <u>accord</u> <u>United States v. Curley</u>, 639 F.3d 50, 56 (2d Cir. 2011). While the government "must explain in detail the purposes for which the evidence is sought to be admitted," <u>United States v. Levy</u>, 731 F.2d 997, 1002 (2d Cir. 1984) (citing <u>United States v. O'Connor</u>, 580 F.2d 38, 40 (2d Cir. 1978)), the Second Circuit has emphasized that Fed. R. of Evid. 404(b) is a rule of broad reach and liberal application. <u>Id</u>. ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible."). Indeed, the Second Circuit has long interpreted Rule 404(b) as an inclusive rule allowing the admission of relevant "other acts" evidence if the evidence is offered to prove something other than criminal propensity and if it passes the balancing test required by Fed. R. of Evid. 403. <u>See</u> <u>Carboni</u>, 204 F.2d at 44; <u>United States v. Stevens</u>, 83 F.3d 60, 68 (2d Cir. 1996) ("this Circuit takes an inclusive approach to prior bad act testimony: such testimony

5

can be admitted for any purpose except to show criminal propensity"); United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998) ("it can be admitted for any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice") (quoting Stevens, 83 F.3d at 68); see also United States v. Rahim, 339 Fed. Appx. 19, 22 (2d Cir. 2009) (summary order) (evidence of prior insider trading permissible to show insider trading by showing background, course of dealing between co-conspirators, intent and absence of mistake).

Thus, to the extent evidence of prior acts is not direct evidence of the charged crimes, it remains admissible under Rule 404(b) if it is: (1) advanced for a proper purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2); (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) admitted subject to a limiting instruction, if such an instruction is requested. See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

### 3. Federal Rule of Evidence 403

Whether admitted as direct evidence or pursuant to Rule 404(b), the offered evidence remains subject to Federal Rule of Evidence 403. The Court must therefore determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion. Fed. R. Evid. 403. The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged.'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting United States v. Roldan-Zapata, 916 F.2d at 804).

6

Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)). To the extent there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged. See United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); see generally Parker v. Randolph, 442 U.S. 62, 75 n.7 (1979) ("The 'rule' – indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions.").

    B.    Discussion

The defendant is charged with two counts: misuse of a passport, in violation of 18 U.S.C. § 1544, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.

To prove the defendant guilty of misuse of a passport, the government must prove each of the following three elements: (1) the defendant used a passport; (2) the passport was issued or designed for the use of someone other than the defendant; and (3) the defendant acted knowingly and willfully.

To prove the defendant guilty of aggravated identity theft, the government must prove each of the following three elements: (1) the defendant knowingly used without legal authority a means of identification of another person; (2) the defendant knew that the means of identification belonged to a real person; and (3) the defendant did so during and in relation to the misuse of a passport.

7

The government proffers the following evidence that it will present on its direct case to prove the defendant's guilt of the charged crimes.

i. Testimony from J.E.

J.E. is an American citizen who moved to the Czech Republic in March 2020 where he sought residency. After moving to Prague, J.E. was introduced to the defendant, who claimed he was an attorney named Raza Sikandar, but who also went by the names Shuja Sikandar and Sam Sikandar. Believing the defendant to be an attorney, J.E. hired the defendant to help him gain residency in the Czech Republic. J.E. also became friends with the defendant and spent a considerable amount of time with him, including attempting to drive from the Czech Republic to the United Kingdom with Sikandar.

J.E. signed a legal contract with Sikandar to help him maintain resident status in Czech Republic. For that reason, J.E. provided Sikandar his United States passport and paid him approximately 70,000 CZK ($3,000 in U.S dollars). However, in November of 2020, through a mutual acquittance, J.E. learned that Sikandar was putting fake passport stamps in other individuals' passports and suspected he was doing the same with J.E.'s passport. J.E. requested that Sikandar return his passport, but Sikandar refused to return J.E.'s passport. Sikandar was interviewed by the Czech Police on November 14 and November 15, 2020 in relation to these and other crimes. Not long thereafter, when Czech authorities suspect the defendant was using his brother's identity, the defendant fled the Czech Republic and was arrested at JFK with J.E.'s passport.

This testimony is direct evidence of Sikandar's crimes and should be admitted in its entirety. Because J.E. spent considerable time with the defendant, he can establish the identity of the defendant, namely that he is Raza Sikandar and not J.E.. By providing the

background by which Sikandar came into possession of J.E.'s passport, this testimony will also establish that the defendant knowingly stole and used J.E.'s passport and knew that the passport belonged to another real person, which are elements of the charged crimes. Additionally, this testimony is inextricably intertwined with the evidence regarding the charged offenses and necessary to complete the story of the crime on trial. Finally, that that the defendant was interviewed by Czech police provided the defendant the motive to commit the charged crimes and flee the country.

        ii.        Testimony from the Defendant's Probation Officer

After being convicted of numerous fraud-related crimes in Virginia, the defendant, Raza Sikandar, was sentenced to a term of imprisonment to be followed by probation. As part of the conditions of his probation supervision, the defendant was informed that he could not change his residence without permission of the probation officer; that he could not travel outside of a designated area without permission; and that he would not abscond from probation, and would be considered an absconder when his whereabouts were no longer known to the probation officer. The defendant was further informed that he would be subject to arrest if he did not follow the conditions of probation.

In 2015, the defendant had his probation transferred from Virginia to Prince Georges County, Maryland, where he was residing with his parents. Between November 2015 and February 2016, Probation Officer Mark Lagerwerff met with the defendant several times at the defendant's parents' home in Maryland. Then, on February 5, 2016, the defendant was not present for his meeting with Lagerwerff and the defendant's father informed Lagerwerff that his son had enrolled in college. Lagerwerff followed up with the school the defendant's family claimed he was attending and learned there was no record of Raza Sikandar being enrolled.

9

Lagerwerff never heard from the defendant again and, in February 2016, a warrant was issued for Raza Sikandar's arrest.

As Lagerwerff interacted with the defendant and knew him to be Raza Sikandar, his testimony is relevant to establish that the defendant is Raza Sikandar, and not J.E.. As such, this testimony is relevant to prove the passport was issued or designed for the use of someone other than the defendant, an element of the charged crimes. Additionally, that the defendant was aware that he was on probation and knew he had absconded from probation and that a warrant was issued for his arrest is relevant to explain his motive for committing the charges crimes: the defendant used the passport of another to avoid being arrested on the open warrant when he re-entered the United States. It also is relevant to prove the defendant used the passport intentionally and without legal authority.

If the government were not permitted to introduce this evidence, the jury may be left with the false impression that the defendant mistakenly or accidentally used the passport of another.

    iii.    <u>Evidence of Raza Sikandar's Arrests and Convictions in Prince William County, Virginia in 2009</u>

Raza Sikandar was arrested in Prince William County, Virginia on six separate occasions in 2009. During each of these arrests an arrest photograph and fingerprints were taken. The government will offer the testimony of the arresting officers to indicate the person they arrested used the name Raza Sikandar and that they took Raza Sikandar's fingerprints. Additionally, the government will introduce the arrest photographs so that the jury can compare Raza Sikandar to the defendant sitting in the courtroom. Furthermore, a fingerprint expert will testify regarding a comparison he did of the fingerprints from the 2009 Virginia arrests and the fingerprints taken during the arrest in the instant case. This evidence is relevant to prove the

10

defendant's identity – namely that he is Raza Sikandar and not J.E. – and that the passport issued or designed for the use of someone other than the defendant

        iv.       <u>Testimony from the Defendant's Brother, Shuja Sikandar</u>

The defendant's brother, Shuja Sikandar, who lives in Maryland, will testify that the defendant is his brother Raza Sikander. Shuja Sikandar will also testify that a passport that was issued in his name (Shuja Sikandar) and his date of birth, did not have his picture, but the picture of his brother Raza. The government will also introduce travel records for this passport demonstrating it was used to travel from Dulles Airport to locations in Europe between 2016 and 2019. Shuja Sikandar will testify that he never left the United States during this time period.

Because he is the defendant's brother, Shuja Sikandar will be able to testify that the defendant seated in the courtroom is Raza Sikandar, and not J.E. Additionally, evidence that the defendant stole the identity of another person is relevant to proving the defendant knowingly and intentionally stole J.E.'s passport, and that it was not done by mistake or accident. See <u>United States v. Arango-Correa</u>, 851 F.2d 54 (2d Cir 1988) ("Under <u>Fed. R. Evid. 404(b)</u>, evidence of similar acts is admissible for such purposes as proof of motive, opportunity, intent, preparation, plan or knowledge. The district court will admit similar act evidence if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."). Furthermore, this shows that the defendant knew he needed to use the passport of another person in order to exit and enter the United States and Czech Republic without being arrested on the open warrants.

        v.       <u>The Defendant's Admissions</u>

Throughout the litigation of this matter, the defendant, both in *pro se* motions and in motions by counsel, has routinely referred to himself as Raza Sikandar. For example, on

March 9, 2021, the defendant wrote to the court a *pro se* motion and signed his name as Raza Sikandar.

Because the defendant refuses to stipulate to any facts at trial, including his identity, the government seeks to admit portions of this letter and others like it as an admission by the defendant that his identity is Raza Sikandar. See Federal Rule of Evidence 801(d)(2)(A). Again, this evidence will prove the defendant is not the person for whom the passport was issued.

### vi. Top 10 Most Wanted Photograph of Raza Sikandar

In 2018, Fauquier County, Virginia routinely published a bulletin on the internet listing its top ten most wanted individuals. The name and picture of Raza Sikandar was routinely on this bulletin. For the reasons discussed above, the fact that the defendant was aware that he was wanted by authorities is relevant to proving his motive and intent to commit the charged crimes. As such, the government seeks to introduce a copy of this bulletin.

## C. The Government Must Prove the Defendant Acted Intentionally

It bears emphasis that the government must prove beyond a reasonable doubt that the defendant <u>knew</u> he was using the passport of another real person, and that he <u>knowingly</u> and <u>willfully</u> used that passport <u>without any legal authority</u>. In other words, if the jury thought it possible the defendant was confused and accidentally presented the passport of J.E., or if the jury thought the defendant manufactured the passport and did not know that J.E. was a real person, it would be required to acquit the defendant of the charged crimes. Similarly, if the jury was under the misimpression that the defendant had some legal authority to use J.E.'s passport, it would be required to acquit the defendant.

As discussed above, the aforementioned evidence is extremely probative of the defendant's intent, and the probative value of the evidence also far outweighs any potential for unfair prejudice under Rule 403. In the recent case of United States v. Roberts-Rahim, 2015 U.S. Dist. LEXIS 143827, 15-CR-243, (E.D.N.Y October 22, 2015(DLI), the Court permitted the government to introduce evidence that the defendant had fraudulently obtained a driver's license to prove that the defendant later used that license to obtain a false passport. The Court found that obtaining the false driver's license was not 404(b) evidence, but constituted part of the "same transaction or series of transactions as the charged offense…is inextricably intertwined with the evidence regarding the charged offense…and is necessary to complete the story of the crime on trial. The Court further stated that evidence relating to the license fills a "conceptual void in the story of the crime."

In much the same way, the jury in the instant matter must hear the complete background of the relationship between J.E. and the defendant, as it explains how the defendant came to possess J.E.'s passport and that J.E. did not give the defendant permission to use the passport.

Additionally, that the defendant has warrants and committed similar acts of fraud is essential to proving his intent to commit the charged crimes. The testimony is additional evidence of the same type of conduct charged in the indictment and is thus, by definition, no more sensational or prejudicial than the charged crimes. See United States v. Livoti, 196 F.3d 322, 326 (2d Cir.1999) (evidence of uncharged act properly admitted where it "did not involve conduct more inflammatory than the charged crime"); United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence "'did not involve conduct any more sensational or disturbing than the crimes

with which [the appellants were] charged'") (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). To be sure, any proof highly probative of guilt is prejudicial to the interests of the defendant against whom it is offered, but there is nothing about this probative evidence that would be "unfair." See Costantino v. Herzog, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair."). Additionally, the Court can issue limiting instructions that the jury consider this evidence only for permissible purposes, and not to suggest that the defendant has any propensity to commit the charged acts.

The defendant's prior acts of fraud go to his knowledge to commit the charged crimes. See United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996) (where only knowledge or intent is in issue, similarity requirement goes to relevance). Thus, admission of a prior acts of fraud to demonstrate a defendant's knowledge, which is contemplated by the explicit language of Rule 404(b), must be acceptable despite the risk of prejudice. See Huddleston, 485 U.S. at 685 ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."); United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996) (evidence of possession of cocaine a week prior to arrest was proper under Rule 403 where the only other evidence of intent, the defendant's confession, was being challenged).

II. THE COURT SHOULD PRECLUDE THE DEFENDANT FROM ARGUING DURESS

The government further moves in limine to preclude the defendant from claiming that he committed the charged crimes because he was under duress.

After the defendant was fingerprint and confronted by CBP officers, he acknowledged that he was not the person in the passport but claimed that fled the Czech

14

Republic because he feared for his safety.[3] Specifically, the defendant indicated that a group of men learned that the defendant was wanted in the United States and attempted to extort him. The defendant further stated that these men beat him, requiring him to go to the hospital, and took all of his identification.[4] According to the defendant, once he was released from the hospital, he felt he needed to flee the Czech Republic to avoid being killed or seriously injured, so he grabbed J.E.'s passport and fled to the United States.

    A. <u>Applicable Law</u>

"The affirmative defense of duress excuses criminal conduct committed under circumstances from which a jury may infer that the defendant's hand was guided not by evil intent, but by imminent threat of grievous bodily harm." <u>See</u> <u>United States v. Zayac</u>, 765 F.3d 112, 120 (2d Cir 2014). To obtain a jury instruction on the affirmative defense of duress, a defendant must make some showing on each of the following three elements: (1) the defendant faced a threat of force; (2) the threat was sufficient to induce a well-founded fear of impeding death or serious bodily injury; and (3) the defendant lacked a reasonable opportunity to escape harm other than by engaging in illegal activity.[5] <u>Id</u>.

---

[3] The government does not intend to introduce this admission on its direct case. As discussed at the July 27, 2021 status conference before the court, the defendant is not permitted to elicit this statement through the testimony of the CBP officers, as it would be hearsay if offered for that purpose.

[4] The defendant stated that he made a report to the Czech National police about this incident and claims that he has a copy of this report. Nevertheless, despite the government requesting discovery pursuant to Federal Rule of Criminal Procedure 16(b), the defendant has yet to provide a single document to the government. The government again renews this request.

[5] With regards to the third element, the Second Circuit has held that it is proper to instruct the jury as follows: "With respect to the third element, if you find that the defendant recklessly or negligently placed himself in a situation in which it was probable that he would be subject to duress, this element is not satisfied." <u>United States v. Hernandez,</u> 894 F3d 496 (2d Cir. 2018).

15

As the Second Circuit has stated, "[a] defendant must make some showing on each element, including the element that the defendant lacked a reasonable means to escape the threatening conduct by seeking the intervention of the appropriate authorities. There is no duress when there exists a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm. United States v. Gonzalez, 407 F.3d 118, 120 (2d Cir 2005). The Second Circuit has emphasized that for the defense of duress to apply, a defendant must show that at the time he committed the otherwise illegal act he was under a threat of force. See United States v. Sinek, 789 Fed. Appx. 910 (2d Cir. 2020)(Summary Order) citing Gonzalez, 407 F.3d at 123 ("It is well established that a defendant must show that there was "a threat of force directed at the time of the defendant's conduct."); United States v. Paul, 110 F.3d 869, 871 (2d Cir. 1997) ("The availability of the duress defense in this case turns on the point in time as to which the defendant faced imminent danger and lacked an opportunity to avoid the danger except by committing an unlawful act."); United States v. White, 552 F.3d 240, 247 (2d Cir. 2009) (immediate danger to defendant ended once defendant knocked the gun out of potential assailant's hands and ran out the door).

The Circuit has also determined that a defendant's subjective belief that he was under a threat at the time of the act does not establish the defense. See Gonzalez, 407 F.3d at 122 (A defendant's subjective belief that going to the police would be futile is insufficient to demonstrate that she had no reasonable alternative but to violate the law.)

Finally, "[u]nder the law of the Second Circuit, the "reasonableness" of an escape opportunity in the context of a duress defense need not be decided by the jury absent special circumstances or the presence of a factual issue." See Zayac, cited supra, at footnote 2.

B. Discussion

Assuming the defendant were to testify that he was beaten in the Czech Republic and feared he would have been subjected to serious bodily injury if he did not flee the Czech Republic, he will be unable to provide evidence that his only reasonable opportunity to escape the supposed harm was to steal the passport of another United States citizen, and then attempt to use that stolen passport when he was 4,000 miles away from the supposed threat. Assuming the threat in the Czech Republic was true – and there is absolutely no evidence of that being the case – the defendant was in New York at the time he used the stolen passport. At that time, any supposed threat had long subsided and the defendant had a number of reasonable alternatives that would not require his commission of a felony.

Furthermore, and importantly, even if the defendant had a well-found fear of impending harm which he believed required him to flee the Czech Republic, it does not follow that he then needed to steal the identity of another person to escape the threat. The defendant could have fled using his own identification, or, if he had none, contacted the American embassy in the Czech Republic. This would have allowed him to escape the threat of harm. The only reason the defendant had to use the identity of J.E. was not to escape any threat of harm, but to avoid his identity being learned by American authorities, who would then realize he had open warrants for his arrest.

Based on the facts before the Court, the defendant should be estopped from presenting such an argument, as there will be no legal basis for the defense and the Court would

17

not submit the defense to the jury. As such, if the defendant did testify to these facts and there was no duress instruction submitted to the jury, it would be confusing to the jury as to why they heard any of this evidence.

### C. A Defense of Duress Would Open the Door to a Lengthy Rebuttal Case

In the event the court did allow the defendant to present evidence of and argue duress, which it should not, the government would then seek to rebut the defendant's claim with the overwhelming evidence that the defendant's duress defense is a lie. First, to the extent the above-mentioned evidence was not previously admitted on the government's direct case, the government submits it would be admissible on a rebuttal case. The government would also seek to introduce evidence that defendant was fleeing the Czech Republic because he was falsely posing as an attorney and defrauded Honeywell, as well as defrauded numerous other individuals in the same way he had defrauded J.E.[6] The government would also seek to introduce the underlying facts of dozens of the defendant's criminal convictions and other criminal acts, as they would rebut the defendant's claim that he was "coerced" or "forced" to commit this crime. This evidence would include testimony that the defendant engaged in fraud and lies for his entire adult life, including dozens of arrests for fraud, writing bad checks, burglary, grand larceny, forgery, and absconding from probation. The government would seek to introduce underlying evidence of many of these crimes and other bad acts to show that the defendant was pre-disposed to criminal conduct and not a person whose will needed to be overcome to commit criminal conduct. This evidence would show that the defendant, by defrauding companies and

---

[6] Although not an actual attorney, the defendant convinced Honeywell that he was an attorney and was hired by the company to do legal work in Honeywell's Prague office. The defendant then defrauded Honeywell out of thousands of dollars, which was also reported to the Czech police.

individuals in the Czech Republic, placed himself in a situation in which it was probable that he would be subject to duress, thereby negating the defense of duress entirely. United States v. Hernandez, 894 F3d 496, 504 (2d Cir. 2018).[7]

## CONCLUSION

For the foregoing reasons, the government's motions should be granted in their entirety. Additionally, the government should be given leave to file further motions as appropriate.

Dated:    Brooklyn, New York
           October 7, 2021

Respectfully submitted,

JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By:   /s/ Andrew P. Wenzel
      Andrew P. Wenzel
      Assistant United States Attorney
      (631) 715-7832

---

[7] If the court is inclined to permit the defendant to present a defense of duress, the government would request as much advance notice as possible, so that travel for rebuttal witnesses can be arranged.